(C.D. 4396)

JOSEPH MARKOVITS, INC. *v.* UNITED STATES

(Decided December 19, 1972)

*Barnes, Richardson & Colburn* (*James S. O'Kelly* of counsel) for the plaintiff.
*Harlington Wood, Jr.*, Assistant Attorney General (*Jordan J. Fiske* and *Andrew P. Vance*, trial attorneys), for the defendant.

WATSON, Judge: This protest places in issue the tariff classification of certain imported artificial fern leaves and bananas. The importations were classified pursuant to item 748.20 of the Tariff Schedules of the United States, as modified by T.D. 68–9, as "[a]rtificial flowers * * * foliage, fruits * * * parts of the foregoing * * * [w]holly or almost wholly of plastics," and assessed with duty at the rate of 26½ per centum ad valorem. Plaintiff claims classification under item 774.60 of the TSUS, as modified by T.D. 68–9, as other articles not specially provided for, of rubber or plastics, dutiable at the rate of 15 per centum ad valorem.

The issue in this case has been confined to a single question regarding an "exclusion within an exclusion." [1] The headnote to subpart B of schedule 7, part 7, specifies certain articles which are to be excluded from the coverage of the provisions for artificial flowers (items 748.20 and 748.21). The language of this exclusionary headnote is as follows:

Subpart B headnotes:

    1. The provisions of items 748.20 and 748.21 do not include—
        (i) articles wholly or almost wholly of glass or ceramics;
        (ii) articles (other than individual parts, such as pistils, stamens, ovaries, petals, calyxes, leaves, and flower heads, fruits, or vegetables without stems and foliage) which have been obtained in one piece from stone, metal, wood, or other material by molding, stamping, carving, forging, or other process;

---

[1] The parties have stipulated that the importations are in chief value of plastics, have been obtained in one piece by molding, are complete articles not designed to be physically joined with anything else and are used both individually and with other articles for purposes of display or decoration. It is further stipulated that the imported ferns and bananas are parts of their respective plants in a botanical sense and the bananas are representative of fruit without foliage and with only part of a stem.

      (iii) articles consisting of parts assembled otherwise than by binding with flexible materials such as wire, paper, textile materials, or foil, or by gluing, or by similar methods; or

      (iv) headwear (see part 1 of this schedule).

Plaintiff, seeking to escape the coverage of the artificial flowers provision, claims the benefit of the exclusion set out in headnote 1(ii), on the ground that the importations are "articles * * * which have been obtained in one piece from * * * other material by molding * * *."

Defendant defends the classification in the artificial flowers provision on the ground that the importations are not within the scope of the exclusion contending they are "individual parts, such as * * * leaves, and * * * fruits * * * without stems and foliage * * *."

Plaintiff responds that the "individual parts" referred to are parts in the sense of components of a more complex article, something which the importations, by stipulation, are not. Defendant maintains that the phrase "individual parts" refers to parts in the botanical sense in which sense it would, under the stipulated facts, describe the importations.

The issue in this case therefore resolves itself into a question of the meaning of the phrase "individual parts" as used in the headnote under discussion. If it means parts in the sense of components, it does not describe the importations, which importations will therefore be excluded from the coverage of the artificial flowers provision. If, however, the phrase "individual parts" means botanical parts, it describes the importations and works to retain them within the scope of the artificial flowers provision, as classified.

When examined in isolation, the meaning of headnote 1(ii) is not clear. On the one hand there is a tendency to read the word "parts" as it is read in numerous provisions of the tariff schedules, as defined in General Interpretative Rule 10(ij) as covering a product chiefly used as part of an article. On the other hand there are aspects of this headnote which appear to be at odds with such a routine reading. First, the word "parts" is preceded by the adjective "individual" which is an uncommon qualification. Second, the phrase "individual parts" is followed by an extensive listing of examples.[2] These two considerations may lend support to the defendant's position that "parts" is being used herein in the botanical sense of the examples given.

---

[2] There is also lacking in the paragraph the usual relationship between the main "article" and its "parts" which is found in conventional provisions, i.e. the "article" usually incorporates the "parts". Here, however, the "article" is something which has been obtained in one piece by molding and cannot have "parts" in the 10(ij) sense of components. This lack of conventional relationship, although it might be instructive in a straightforward tariff provision, is of little weight in a headnote since the "parts" spoken of need not be parts of the article made in one piece but can be parts *made by the same method* as the article.

When we enlarge our field of view to cover the entire headnote, there are still no specific indications of a legislative pattern which will clarify the parenthetical exception in headnote 1(ii). However, at this stage there does seem to emerge in the headnote an overall concern for materials and methods of manufacture and assembly which seems out of phase with a parenthetical exception confined to parts in their scientific, botanical sense.

Finally, in order to settle the confusion arising from this headnote and the ambiguity in the word "parts", it is necessary to examine the legislative history of this provision, an examination I believe leads to considerable clarification of this headnote.

The Tariff Classification Study, prepared by the Tariff Commission for Congress as an aid in the revision of the tariff laws, gave close attention to the problems of classifying artificial flowers and related articles under paragraph 1518 of the Tariff Act of 1930. In its explanatory notes to the recommended new provisions, the Tariff Commission stated as follows at page 355:

> It is believed that the primary coverage intended for these provisions in paragraph 1518 is with respect to those articles which at one time were chiefly the product of a handcraft industry and which are made by assembling *individual parts, such as petals, pistils, and leaves,* by binding with flexible material such as wire, paper, textile material, or foil, or by gluing or similar methods. In order to cut the knot of confusing tariff provisions now existing in paragraph 1518, the scope of the proposed provisions in this subpart is so limited. To this purpose, headnote 1 of this subpart excludes from the new provision—
> (a) articles wholly or almost wholly of glass or ceramics,
> (b) all articles which have been obtained in one piece from stone, metal, wood, or other material by molding, stamping, carving, forging, or other process,
> (c) all articles consisting of parts assembled otherwise than by the manner described above, and
> (d) headwear.
> These categories of excluded articles cover a large part of the products which have produced classification problems under the present provisions. The Commission feels they are more appropriately classified in other parts of the schedules. [Emphasis supplied.]

It is my opinion that this crucial piece of legislative history clarifies both the unifying intention underlying the headnote and the meaning and source of the parenthetical phrase dealing with "individual parts". The provision for artificial flowers must be viewed as centering on the coverage of those products which are made by the assembly of parts by binding, gluing or similar methods. The headnote is designed to effectuate this coverage by excluding products

made in other manners. Headnote 1(ii) is accordingly directed to the exclusion of articles made in one piece. However, there is a clear danger of internal contradiction here absent the parenthetical phrase, since headnote 1(ii) could, if read literally, cover parts of articles assembled by binding, etc., if those parts happen to be obtained in one piece from the indicated materials and by the named processes.

Thus, the parenthetical phrase in headnote 1(ii) arises from a concern for the integrity of the coverage of the artificial flowers provision over "parts of the foregoing", that is to say, parts of artificial flowers, etc., which flowers are assembled by binding, gluing, or similar methods. Arising in this manner as protection against the complete deflowering of items 748.20 and 748.21, the phrase in question must be speaking of parts in the conventional sense of "components" to be "assembled".

This view is further supported by the observation that the parenthetical phrase is in great measure an echoing of that portion of the explanatory notes which describes the primary coverage of the artificial flowers provisions as products "* * * which are made by assembling *individual parts, such as petals, pistils and leaves * * *"* [emphasis supplied]. The transposition of this phrase in slightly expanded form to headnote 1(ii) has further implications.

Given the considerations set out above, it might still have been possible to accomplish the objective of protecting the integrity of items 748.20 and 748.21 and their coverage of parts with more concise language such as "articles, other than parts of articles, which have been obtained in one piece, etc." The use of the adjective "individual" and the generous list of examples, still appears superfluous, unless they were included for additional reasons. I am of the opinion that the same legislative history which led to our understanding the necessity for the insulation of certain parts from the exclusionary effect of headnote 1(ii) leads us to the further conclusion that these parts are further limited to those which are used in assembly by binding, gluing and similar methods.

This means the entire parenthetical phrase was written to single out the parts ordinarily used in assembly by binding, gluing or similar methods. If the intention was to single out all parts, the word "individual" and the examples would indeed be superfluous. However, if the intention is to specify only parts used in assembly by binding, the additional language becomes understandable, if not felicitous, in light of the legislative history.[3]

---

[3] This may also be the correct answer to the purported anomaly raised by defendant in *Armbee Corporation, W. J. Byrnes & Co., Inc.* v. *United States*, 60 Cust. Ct. 105, 111, C.D. 3278 (1968), to avoid which defendant asserted that since parts of "snap-on" artificial flowers would be classified as parts of artificial flowers the completed flowers should also

In any event, it is clear to me that headnote 1 (ii) is speaking of parts as components and not as botanical terms. My study of this headnote and its legislative history have not revealed any reason why, in a provision focused on methods of assembly and manufacture, imbued with a sense of articles and their component parts and requiring language which speaks to problems involving component parts, a single parenthetical phrase should be considered as speaking in botanical terms.

For the reasons set out above, I find that the instant importations, as independent articles and not parts in the component sense, are articles obtained in one piece by molding and are therefore excluded from classification under the artificial flowers provision. Classification in that provision was incorrect. I find further that the importations, being in chief value of plastic, are more properly classifiable as other articles not specially provided for, of plastic, pursuant to item 774.60 of the TSUS.

Judgment will issue accordingly.

(C.D. 4397)

---

be classified under the artificial flowers provision. At that time I simply accepted the possibility raised by defendant of the parts being classified under artificial flowers and the completed article being excluded, by its method of assembly, from such a classification. Now, in light of my further analysis of this provision, I am less inclined to accept defendant's premise that parts of excluded articles remain in the artificial flowers provision.